LATHAM & WATKINS LLP
  Jennifer L. Barry (Bar No. 228066)
   *jennifer.barry@lw.com*
  Patrick C. Justman (Bar No. 281324)
   *patrick.justman@lw.com*
12670 High Bluff Drive
San Diego, CA  92130
858.523.5400 / 858.523.5450 (Fax)

Attorneys for Plaintiff
PROTON AG

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| PROTON AG, a Switzerland aktiengesellschaft,<br><br>               Plaintiff,<br><br>    v.<br><br>METALLICUS, INC., a California corporation,<br>               Defendant. | CASE NO. 3:21-cv-09714<br><br>**Complaint For:**<br><br>**(1)  Trademark Infringement**<br>     **(Lanham Act, 15 U.S.C. § 1114)**<br><br>**(2)  Unfair Competition/False Designation of Origin**<br>     **(Lanham Act, 15 U.S.C. § 1125(a))**<br><br>**(3)  Common Law Trademark Infringement**<br><br>**(4)  Common Law Unfair Competition**<br><br>**DEMAND FOR JURY TRIAL** |

COMPLAINT
DEMAND FOR JURY TRIAL

**COMPLAINT**

**NATURE OF ACTION**

1.    Plaintiff Proton AG ("Proton") brings this complaint against Metallicus, Inc. ("Metal") for (i) federal trademark infringement and false designation of origin, and unfair competition in violation of the Lanham Act, 15 U.S.C. § 1051, *et seq*. and (ii) common law trademark infringement and unfair competition under California law.  Proton alleges, with knowledge concerning its own acts and on information and belief as to all other matters (unless otherwise specifically stated), as follows:

**THE PARTIES**

2.    Proton (f/k/a Proton Technologies AG) is a Swiss technology company with its principal place of business at Route de la Galaise 32, 1228 Plan-les-Ouates, Geneva, Switzerland.

3.    Defendant Metal is a California corporation, with a primary place of business at 660 4th Street, Suite 107 San Francisco, CA 94107.

4.    Defendant conducts business throughout the United States, including in California and within this District, using the PROTON mark, as well as several other PROTON derivative marks such as PROTON MARKET, PROTON WALLET, PROTON CHAIN, PROTON TOKEN, and others (collectively, the "Metal PROTON Marks" or "Infringing Marks").

5.    As fully detailed below, Defendant uses the Metal PROTON Marks in a manner that violates Proton's recognized rights in the PROTON trademark and various PROTON-derivative trademarks, all of which share the common element that is Proton's house mark, PROTON.

**JURISDICTION AND VENUE**

6.    Pursuant to 15 U.S.C. § 1121(a) and 28 U.S.C. § 1338(a), this Court has subject matter jurisdiction over Proton's claims for relief for violation of the Lanham Act.  Pursuant to 28 U.S.C. § 1338(b), this Court has supplemental

jurisdiction over Proton's state law claims because they are joined with substantial and related claims under the Lanham Act.  This Court also has supplemental jurisdiction over Proton's state law claims pursuant to 28 U.S.C. § 1367(a) because all of Proton's claims arise out of a common nucleus of operative facts.

7.     This Court has personal jurisdiction over Defendant because Defendant resides and maintains its offices in this State.

8.     Venue in this Court exists under 28 U.S.C. § 1391(b)(1) and (2), as Defendant resides within this District and a substantial part of the events giving rise to Proton's claims occurred within this District.

9.     This is an intellectual property action to be assigned on a district-wide basis under Civil Local Rule 3-2. This case may also be assigned to the San Francisco Division, as a substantial part of the events giving rise to the alleged claims occurred in San Francisco County.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF
### Proton and Its Successful PROTON TECHNOLOGIES® Brand

10.     Proton is a technology company founded in 2014 that is dedicated to the goal of building an internet that respects privacy and is secure against cyberattacks.

11.     Proton works towards this goal by developing a wide variety of tools that protects consumer's data online, permits encrypted and secure communications, and advances civil liberties.

12.     Proton has embarked on this mission under its tradename, PROTON TECHNOLOGIES®, and it offers several products under various PROTON-derivative trademarks, all of which share the common element that is Proton's house mark, PROTON.

13.     For instance, since at least 2014, Proton has offered end-to-end encrypted email services that respects privacy under the PROTONMAIL mark, as shown below:



(*www.protonmail.com*)

14.    Proton's innovative and secure email services proved to be extremely popular with consumers. As a result, Proton was quickly able to expand its technology offerings.

15.    For example, Proton began to offer secure VPN services under the PROTONVPN mark in 2017.  Shortly thereafter, Proton continued to expand its services to include secure data storage under the PROTONDRIVE mark, and even a more secure calendar and event planning service under the PROTONCALENDAR mark.

16.    In addition, Proton also owns valid trademark registrations for PROTON TECHNOLOGIES and PROTONAPPS.  These marks all incorporate Proton's house mark, PROTON, and have contributed to the success and renown of Proton, its PROTON TECHNOLOGIES trade name, and the PROTON house mark.

17.    By the end of 2020, Proton had over 50 million registered users for its email services alone.  By all metrics, Proton's technology offerings are a massive

success, and consumers have grown to recognize and trust Proton as a source of advanced online technological services.

## Proton's Intellectual Property Rights

18.    Proton owns, and has obtained United States federal registrations for, a family of PROTON related marks, as follows:

| TRADEMARK | CLASS:  GOODS/SERVICES | REG. NO. REG. DATE |
|---|---|---|
| PROTON TECHNOLOGIES | 38:  Providing electronic transmission of secure e-mail; Providing virtual private network (VPN) services<br>42:  Electronic data storage; Computer programming services for others for creating non-downloadable software for managing individual and group calendars and schedule | 6,337,643 May 4, 2021 |
| PROTONAPPS | 38:  Providing virtual private network (VPN) services via a software application; Providing electronic transmission of secure e-mail via a software application | 6,050,983 May 12, 2020 |
| PROTONCALENDAR | 42:  Providing on-line non-downloadable software for managing individual and group calendars and schedules | 6,059,685 May 19, 2020 |
| PROTONDRIVE | 42:  Electronic data storage | 5,307,278 October 10, 2017 |
| PROTONMAIL | 38:  Secure e-mail services | 4,751,245 June 9, 2015 |
| PROTONMAIL<br><br>ProtonMail | 38:  Secure e-mail services | 4,754,889 June 16, 2015 |
| PROTONVPN | 38:  Providing virtual private network (VPN) services | 5,214,849 May 30, 2017 |

19.    The above marks, as well as the PROTON mark, are collectively referred to as the "PROTON Marks."  The above registrations are collectively referred to as the "PROTON Registrations."

20.    Proton's registrations for the PROTONMAIL mark are also incontestable pursuant to 15 U.S.C. § 1065, which constitutes conclusive evidence of the registrations' validity, as well as Proton's entitlement to the exclusive use of

the marks in commerce throughout the United States on the goods and services listed in the registrations.

21.    Further, the PROTON Registrations constitute prima facie evidence that most of the PROTON Marks are valid, and that Proton is entitled to the exclusive use of most of the PROTON Marks in commerce throughout the United States on the goods and services listed in the registrations.

22.    Proton has been and is now engaged in the business of developing, creating, distributing, marketing, advertising, and selling a wide variety of goods and services under the PROTON Marks, and in particular under the PROTONMAIL and PROTONVPN marks.  In fact, Proton has used the PROTONMAIL and PROTONVPN Marks in commerce since 2014 and 2016, respectively, and all of the PROTON Marks are well-known and recognized as identifying goods and services that originate from Proton.

## Defendant's Unauthorized Use of Proton's Marks

23.    Founded in 2016, Defendant offers services under the METAL and METAL PAY marks to provide consumers with the "easiest way to buy, sell, and trade crypto[currency]," as shown below:



(*www.metalpay.com*)

24.    After operating under the METAL and METAL PAY marks for several years, Defendant recently began using the PROTON mark, as well as several other PROTON derivative marks (i.e., the Metal PROTON Marks), to offer various technology services, including messaging services, relating to blockchain and cryptocurrencies.

25.    For example, on Defendant's primary *metalpay.com* website, it advertises and promotes its two primary services, METAL PAY and PROTON, as shown here:



26.    Further, Defendant owns the *www.protonmarket.com* domain name where it markets the ability to create and sell your own non-fungible tokens (NFTs) using the PROTON MARKET mark, as shown below:



LATHAM&WATKINS LLP US-DOCS\127249157.1
ATTORNEYS AT LAW

6



(*www.protonmarket.com*)

27.    Defendant also owns the *www.protonchain.com* domain name, where it advertises cryptocurrency payment services using the PROTON, PROTON CHAIN, and PROTON WALLET marks, as shown below:

(*www.protonchian.com/wallet*)

28.    Similarly, on the *www.protonchain.com* domain name, Defendant markets cryptocurrency services using the PROTON and PROTON TOKEN marks, as shown below:



(*www.protonchain.com*)

29.    Under the Metal PROTON Marks, Defendant offers a variety of goods and services, including but not limited to the aforementioned.

30.    Defendant also advertises its services under the PROTON and PROTONXPR marks on various social media platforms, including, but not limited to Facebook, Instagram, and Twitter (the "Social Media Accounts") as shown below:



(*www.twitter.com/protonxpr/*)

(*www.instagram.com/protonxpr/*)

(*www.facebook.com/protonxpr/*)

31.   Defendant filed an intent-to-use application (Serial No. 90/104206) with the U.S. Patent and Trademark Office ("USPTO") to register the PROTON mark for use with the following goods and services:  "downloadable software application providing payment messaging and payment processing services" and "application service provider featuring application programming interface (API) software for payment messaging and processing" in Classes 9 and 42.  While this application was filed on an intent-to-use on August 10, 2020, Defendant has obviously commenced use of this mark, as demonstrated above.

32.   In light of Proton's clearly senior and superior rights in the PROTON Marks, Proton is very concerned that consumers will likely be confused and mistakenly believe that Defendant and its goods and/or services are endorsed, approved, or sponsored by, or affiliated, connected, or associated with, Proton. In fact, consumer confusion has already occurred and will continue to occur unless Defendant is stopped, as further explained below.

33.   Defendant will thus reap the benefits of Proton's reputation and goodwill based on this consumer confusion, to Proton's detriment.

34.     Proton has attempted to reconcile its concerns with Defendant, but Defendant has refused to cease use of the Infringing Marks.

35.     Given Defendant's failure to respond to Proton's concerns, and Defendant's continuing use of the Infringing Marks, Proton brought this suit to fully litigate and resolve the trademark issues between the parties.

<b><u>Proton Is Harmed By Defendant's Continuing</u></b>

<b><u>Infringement & Unlawful Conduct</u></b>

36.     Defendant's continued use of the confusingly similar Infringing Marks in commerce violates Protons's valuable intellectual property rights in the PROTON Marks and PROTON Registrations, and Defendant's knowing, intentional, willful, and malicious use of this mark is damaging to Proton and Proton's property.

37.     Defendant has used the Infringing Marks to unfairly usurp and capitalize on the value and goodwill of the PROTON Marks and PROTON Registrations.  Defendant is aware of Proton's strong trademark rights and reputation in the marketplace, but nevertheless, uses the Infringing Marks to profit from the goodwill associated with the PROTON Marks and PROTON Registrations.

38.     Defendant has intentionally and knowingly capitalized off of confusion between the PROTON Marks by providing highly related services to the same consumers, as described above.

39.     Indeed, and not surprisingly, Defendant's use of the Infringing Marks in commerce has already caused consumer confusion.  As just one example, Twitter users were discussing Defendant's PROTON MARKET mark and service recently, which resulted in one user inserting Proton into the conversation and stating, "btw, heads up [Proton], some cryptoscammers are impersonating your brand, your lawyers might want to take a look," as shown below:



(*www.twitter.com/bairhug/status/1437245551754375168?s=20*)

40.    Similarly, Reddit users were discussing Defendant's PROTON CHAIN mark and related services, which resulted in one user becoming confused about the relationship between Defendant and Proton.  Another user corrected the issue by stating, "Protonmail is an entirely different company…" than Defendant, as shown below:



(*www.reddit.com/r/pancakeswap/comments/p0ikn9/pancakeswap_listed_proton_b ut_this_community/*)

41.    Due to Defendant's continuing willful infringement and unlawful conduct, Proton is now forced to bring this Complaint to protect its valuable intellectual property rights.  Proton had to retain counsel and incur substantial fees and costs (and it continues to incur those fees and costs) to prosecute this suit and pursue its claims.

42.    Proton's interest in protecting its intellectual property rights and its products and services from consumer confusion outweigh any harm to Defendant.

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW

US-DOCS\127249157.1

12

COMPLAINT
DEMAND FOR JURY TRIAL

The public interest is best served by granting Proton's requested relief against Defendant.

### FIRST CLAIM FOR RELIEF

### Federal Trademark Infringement – 15 U.S.C. § 1114

43. Proton incorporates by reference the factual allegations set forth above.

44. Proton owns the PROTON Registrations. The trademarks reflected in the PROTON Registrations are strong and distinctive and designate Proton as the source of all products and services advertised, marketed, sold, or used in connection with those trademarks.

45. Proton is the senior user of the marks reflected in the PROTON Registrations as it began use of those marks in interstate commerce prior to Defendant's first use of the confusingly similar Infringing Marks.

46. Defendant does not have authorization, license, or permission from Proton to market and sell its products and services under the Infringing Marks, which are confusingly similar to the PROTON Registrations and which are used by Defendant with products and services that are identical and/or highly related to the products and services associated with Proton and the marks reflected in the PROTON Registrations.

47. Defendant is aware of the PROTON Registrations as Defendant is on constructive notice based on Proton's federal registrations, as well as on actual notice based on Proton's numerous communications with Defendant about this matter. Yet, Defendant continued to use its Infringing Marks. Thus, Defendant's unauthorized use of the confusingly similar Infringing Marks was and is knowing, intentional, and willful.

48. As a direct and proximate result of Defendant's wrongful conduct, Proton has been and will continue to be damaged.

49. Defendant's actions therefore constitute trademark infringement.

50.     Unless an injunction is issued enjoining any continuing or future use of the confusingly similar Infringing Marks by Defendant, such continuing or future use is likely to continue to cause confusion, mistake, or deception as to source, origin, affiliation, or sponsorship, and will thereby irreparably harm Proton.

51.     Defendant's activities have caused and will continue to cause irreparable harm to Proton, for which it has no adequate remedy at law, because: (i) the marks reflected in the PROTON Registrations comprise unique and valuable property rights that have no readily determinable market value; (ii) Defendant's infringement constitutes interference with Proton's goodwill and customer relationships and is harming and will continue to substantially harm Proton's reputation as a source of high-quality goods and services; and (iii) Defendant's wrongful conduct, and the damages resulting to Proton, are continuing. Accordingly, Proton is entitled to injunctive relief pursuant to 15 U.S.C. § 1116(a).

52.     Pursuant to 15 U.S.C. §1117(a), Proton is entitled to an order: (i) requiring Defendant to account to Proton for any and all profits derived from its infringing actions, to be increased in accordance with the applicable provisions of law; and (ii) awarding all damages sustained by Proton that were caused by Defendant's conduct.

53.     Defendant's conduct was and is intentional and without foundation in law, and, pursuant to 15 U.S.C. § 1117(a), Proton is therefore entitled to an award of treble damages against Defendant.

54.     Defendant's acts make this an exceptional case under 15 U.S.C. § 1117(a); thus Proton is entitled to an award of attorneys' fees and costs.

## SECOND CLAIM FOR RELIEF

### Federal Unfair Competition/False Designation of Origin – 15 U.S.C. § 1125(a)

55.     Proton incorporates by reference the factual allegations set forth above.

56. The PROTON Marks are strong and distinctive and designate Proton as the source of all goods and services advertised, marketed, sold, or used in connection with those marks.

57. Proton is the senior user of the PROTON Marks as it began use of those marks in interstate commerce prior to Defendant's first use of the confusingly similar Infringing Marks.

58. Defendant was aware of the PROTON Marks because Defendant was on constructive notice based on Protons's federal registrations, as well as on actual notice based on Proton's numerous communications with Defendant about this matter. Yet, Defendant continued to use its Infringing Marks. Thus, Defendant's unauthorized use of the confusingly similar Infringing Marks was and is knowing, intentional, and willful.

59. Through its use of the confusingly similar Infringing Marks, Defendant intended to, and did in fact, confuse and mislead consumers into believing, and misrepresented and created the false impression, that Proton somehow authorized, originated, sponsored, approved, licensed, or participated in Defendant's use of the confusingly similar Infringing Marks.

60. In fact, there is no connection, association, or licensing relationship between Proton and Defendant, nor has Proton ever authorized, licensed, or given permission to Defendant to use the confusingly similar Infringing Marks in any manner.

61. Defendant's use of the confusingly similar Infringing Marks will likely cause confusion as to the origin and authenticity of Defendant's website, and related goods and services, and will likely cause others to believe that there is a relationship between Defendant and Proton when there is, in fact, not.

62. As a direct and proximate result of Defendant's wrongful conduct, Proton has been and will continue to be damaged.

63. Defendant's actions thus constitute false designation of origin and unfair competition.

64. Defendant's activities have caused, and will continue to cause, irreparable harm to Proton, for which it has no adequate remedy at law, in that: (i) the PROTON Marks comprise unique and valuable property rights that have no readily determinable market value; (ii) Defendant's infringement constitutes interference with Proton's goodwill and customer relationships and will substantially harm Proton's reputation as a source of high-quality goods and services; and (iii) Defendant's wrongful conduct, and the damages resulting to Proton, are continuing.  Accordingly, Proton is entitled to injunctive relief pursuant to 15 U.S.C. § 1116(a).

65. Pursuant to 15 U.S.C. §1117(a), Proton is entitled to an order: (i) requiring Defendant to account to Proton for any and all profits derived from its actions, to be increased in accordance with the applicable provisions of law; and (ii) awarding all damages sustained by Proton that were caused by Defendant's conduct.

66. Defendant's conduct was and is intentional and without foundation in law, and pursuant to 15 U.S.C. § 1117(a), Proton is therefore entitled to an award of treble damages against Defendant.

67. Defendant's acts make this an exceptional case under 15 U.S.C. § 1117(a); thus Proton is entitled to an award of attorneys' fees and costs.

### THIRD CLAIM FOR RELIEF

### Common Law Trademark Infringement

68. Proton incorporates by reference the factual allegations set forth above.

69. Proton has valid and protectable common law rights in the PROTON Marks.

70. Proton is the senior user of the PROTON Marks.

71. Defendant's conduct constitutes infringement of Proton's common law rights in the PROTON Marks.

72. Defendant's use of the confusingly similar Infringing Marks on unauthorized goods and services is likely to cause confusion as to the origin of Defendant's goods and services and is likely to cause others to believe that there is a relationship between Defendant and Proton.

73. Defendant's wrongful acts have permitted and will permit them to receive substantial profits based upon the strength of Proton's reputation and the substantial goodwill it has built up in the PROTON Marks.

74. As a direct and proximate result of Defendant's wrongful conduct, Proton has been and will continue to be damaged.

75. Unless an injunction is issued enjoining any continuing or future use of the PROTON Marks by Defendant, such continuing or future use is likely to continue to cause confusion and thereby irreparably damage Proton. Proton has no adequate remedy at law. Accordingly, Proton is entitled to an injunction.

## FOURTH CLAIM FOR RELIEF

## Common Law Unfair Competition

76. Proton incorporates by reference the factual allegations set forth above.

77. Proton has expended significant time and expense in developing the PROTON Marks and the high-quality products and services it markets and sells under those marks. The PROTON Marks have been very successful and have developed a substantial reputation and goodwill in the marketplace.

78. Through its wrongful conduct, Defendant has misappropriated Proton's efforts and are exploiting the PROTON Marks and Proton's reputation to market and sell its services under the Infringing Marks. These actions constitute unfair competition.

ATTORNEYS AT LAW

17

COMPLAINT
DEMAND FOR JURY TRIAL

79.    As a direct and proximate result of Defendant's wrongful conduct, Proton has been and will continue to be damaged.

80.    Unless an injunction is issued enjoining Defendant's unfairly competitive conduct, Proton will continue to be damaged irreparably.  Proton has no adequate remedy at law.  Accordingly, Proton is entitled to an injunction.

81.    Defendant has acted willfully, intentionally and maliciously, such that Proton is entitled to punitive damages.

## PRAYER

WHEREFORE, Proton prays for the following relief:

A.    An injunction ordering Defendant, and its officers, directors, members, agents, servants, employees, and attorneys, and all other persons acting in concert or participating with them (collectively, the "Enjoined Parties"), who receive actual notice of the injunction order by personal or other service, to:

    i.    cease all use and never use the PROTON mark, any of the PROTON Marks, the Infringing Marks, or any other mark likely to cause confusion with the PROTON Marks, including any misspelling or variation of those marks, in, on, or with any products or services, or in connection with the, advertising, marketing, or other promotion, distribution, offering for sale, or sale, of any products or services, including on the Social Media Accounts;

    ii.    never use any false designation of origin, false representation, or any false or misleading description of fact, that can, or is likely to, lead the consuming public or individual members thereof, to believe that any products or services produced, offered, promoted, marketed, advertised, provided, sold or otherwise distributed by the Enjoined Parties is in any manner

associated or connected with Proton, or are licensed, approved, or authorized in any way by Proton;

iii. never represent, suggest in any fashion to any third party, or perform any act that may give rise to the belief, that the Enjoined Parties, or any of its products or services, are related to, or authorized or sponsored by, Proton;

iv. never register any domain name that contains any of the PROTON Marks or any misspelling or variation of those Marks, or any domain name confusingly similar to any of the PROTON Marks;

v. transfer to Proton all domain names in the Enjoined Parties' possession, custody, or control that include the word "proton" or any misspelling or variation thereof, are otherwise confusingly similar to or contain any of the PROTON Marks, or were used in connection with the Infringing Marks, including but not limited to *www.protonchain.com* and *www.protonmarket.com*;

vi. cease all use of the Social Media Accounts and any similar accounts or social media websites, and never register or attempt to register any social media account that contains the PROTON mark, any of the PROTON Marks, or any misspelling or variation of those Marks, or any other social media account confusingly similar to any of the PROTON Marks;

vii. transfer to Proton, disable, or delete the Social Media Accounts that were used to promote the Infringing Marks, including all such accounts in Defendant's possession, custody, or control that include the word "proton" or any misspelling or variation

thereof, or are otherwise confusingly similar to or contain any of the PROTON Marks;

viii.  never unfairly compete with Proton in any manner whatsoever, or engage in any unfair, fraudulent, or deceptive business practices that relate in any way to the production, distribution, marketing, and/or sale of products and services bearing any of the PROTON Marks or any other mark likely to cause confusion with the PROTON Marks, including any misspelling or variation of those Marks; and

ix.  never apply for or seek to register the PROTON mark, any of the PROTON Marks, or any other mark likely to cause confusion with the PROTON Marks, including any misspelling or variation of those Marks.

B.  An order, pursuant to 15 U.S.C. § 1118, requiring the Enjoined Parties to deliver and destroy within thirty days all prints, advertising, packaging, goods, and other materials bearing the Infringing Marks.

C.  An order pursuant to 15 U.S.C. § 1116(a), directing the Enjoined Parties to file with the Court and serve upon Proton's counsel, within thirty (30) days after service of the order of injunction, a report in writing under oath setting forth in detail the manner and form in which the Enjoined Parties have complied with the injunction.

D.  To give practical effect to the Court's injunction, an order that the social networking service or entity (e.g., Facebook) related to any of the social media accounts subject to this Order shall, within fourteen (14) days of receipt of the Order, transfer, disable, or otherwise cancel those subject accounts at Proton's request if the Enjoined Parties have not already done so.

E.  To give practical effect to the Court's injunction, an order that the Registry or Registrar for any of the foregoing domain names shall, within fourteen

(14) days of receipt of the Order, transfer or otherwise assign those subject domain names to Proton if the Enjoined Parties have not already done so.

F.     An order finding that, by the acts complained of above, Defendant has infringed Proton's federally-registered trademarks in violation of 15 U.S.C. § 1114.

G.     An order finding that, by the acts complained of above, Defendant has created a false designation of origin and false representation of association in violation of 15 U.S.C. § 1125(a).

H.     An order finding that, by the acts complained of above, Defendant has engaged in common law trademark infringement.

I.     An order finding that, by the acts complained of above, Defendant has engaged in common law unfair competition.

J.     An order awarding Proton damages as follows:

    i.     Pursuant to 15 U.S.C. § 1117(a), Proton's actual damages, as well as all of Defendant's profits or gains of any kind from its acts of trademark infringement, false designation of origin, and unfair competition, including a trebling of those damages; and

    ii.     Punitive damages pursuant to California common law.

K.     An order pursuant to 15 U.S.C. § 1117(a), finding that this is an exceptional case and awarding Proton its reasonable attorneys' fees.

L.     An order pursuant to 15 U.S.C. § 1117(a), awarding Proton all of its costs, disbursements, and other expenses incurred due to Defendant's unlawful conduct.

M.     An order awarding Proton pre-judgment interest.

N.     An order awarding Proton such other relief as the Court deems appropriate.

# JURY DEMAND

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury.

Dated:  December 16, 2021

Respectfully submitted,

LATHAM & WATKINS LLP

By /s/ *Jennifer L. Barry*
   Jennifer L. Barry

*Attorneys for Plaintiff*
PROTON AG